# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-294 (JDB) |
|  | : |  |
| v. | : | UNSEALED **FILED** |
|  | : |  |
| JOAQUIM DESOUSA, | : | AUG 2 7 2007 |
|  | : |  |
| Defendant. | : | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

## GOVERNMENT'S *EX PARTE* EMERGENCY MOTION TO REVOKE DEFENDANT'S RELEASE PENDING SENTENCING

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the Court revoke the condition of release for the defendant, Joaquim DeSousa, issue a bench warrant for his arrest, and hold him without bond pending his sentencing hearing now scheduled for September 10, 2007. DeSousa, on release from this Court after pleading guilty on April 25, 2007, recently communicated an intent to leave the country for an extended period and, in the process, apparently attempted to defraud a company out of approximately $83,000. In addition, after agreeing as a condition of bond to close out any websites related to automated teller machines ("ATMs") and not to violate any state or federal laws, the defendant (1) continued to operate an ATM-related website, and (2) operated that website in a fraudulent manner. As a result, the United States respectfully requests that this Court revoke the defendant's release and hold him without bond pending sentencing.

### BACKGROUND

A federal grand jury indicted DeSousa on October 3, 2006, charging him with two counts of mail fraud, ten counts of wire fraud, seven counts of credit card fraud, and one count of first degree theft. Agents with the United States Secret Service arrested DeSousa pursuant to a bench warrant on February 13, 2007. On February 16, 2007, DeSousa was released on standard

conditions by Magistrate Judge Kay, including the conditions printed on the reverse of the pretrial release order admonishing that the defendant not commit any criminal offenses while on pretrial release.

On April 25, 2007, DeSousa pleaded guilty to counts one and two and four through nineteen of the indictment charging mail fraud, wire fraud and credit card fraud. DeSousa admitted that beginning in August 2002, he defrauded more than 400 people by placing advertisements in local newspapers and over the internet offering employment, financial information and at-home massages. He admitted that instead of providing the promised information or service, he misappropriated the individuals' personal information to open credit accounts or make unauthorized charges. He also admitted that he used a number of aliases (Joaquin Desouza, Jack Sousa, and Jack Ford), created a number of business names (HCI, HCL, HCC, and New Jack Escort), operated from a number of DC addresses, and used at least two DC phone numbers.

At the plea hearing, this Court allowed DeSousa to remain on personal recognizance, but ordered him as a condition of release to close out all ATM-related websites. The special condition requiring DeSousa to close out all ATM-related websites arose from the government's discovery, after the indictment but prior to the plea hearing, that DeSousa had conducted fraudulent transactions through an ATM-related website named www.hcinc.biz. More specifically, the government learned that DeSousa had operated the website to defraud several people by passing off used ATM machines as new ATM machines. As a result, as a special condition of release, the Court ordered DeSousa to close out all ATM-related websites.

## CURRENT CONDUCT

**A.**    **DeSousa's stated intent to leave the country and attempt to defraud**

On August 23, 2007, employees of Paychex, Inc. ("Paychex") contacted the United States

Attorney's Office by telephone to discuss their recent communications with DeSousa. Following

that call, Special Agent Mathew Lucjak of the United States Secret Service contacted Paycheck

to discuss its communications with DeSousa. As described below, Special Agent Lucjak learned

from that discussion that DeSousa adamantly sought $83,000 from Paycheck through apparent

misrepresentations in connection with his stated intention to leave the country for an extended

period of time. *See* Declaration of Special Agent Matthew Lucjak ("Lucjak Dec.") (attached

hereto as Exhibit 1).

On August 23, 2007, at the direction of the United States Attorney's Office, Special

Agent Lucjak contacted Ms. Chinyere Ojukwu, a Paychex employee. *See* Lucjak Dec. at ¶ 3.

Paychex provides payroll services to small companies and individuals. *Id.* According to Ms.

Ojukwu, DeSousa called Paychex's office three or four times seeking payroll services. *Id.* ¶ 4.

Following those calls, at DeSousa's request, Ms. Ojukwu stated that she met with DeSousa at the

Inner Harbor in Baltimore, Maryland to discuss Paychex's services. *Id.*

During their meeting in Baltimore, Ms. Ojukwu stated that DeSousa informed her that he

wanted to use Paychex to provide payroll services to his company, which he identified to her as

HCI Communication Inc. ("HCI"). *Id.* ¶ 5. DeSousa represented to her that HCI was involved in

a business related to ATMs. *Id.* As part of their discussions, DeSousa provided her with the

following documents: (1) an Employer Identification Number form letter from the Internal

Revenue Service for HCI; (2) a handwritten list of six separate bank accounts purportedly

3

controlled by DeSousa; (3) a voided check from a checking account in DeSousa's name from Chevy Chase Bank; (4) wiring instructions for an account in DeSousa's name at Bank of New York; (5) a Paychex Services Agreement executed by DeSousa; and (6) a Paychex Direct Deposit/Access Card authorizing Paychex to deposit $14,000 in DeSousa's account at Bank of New York. *Id.* Copies of those documents are attached as Tab A to the Lucjak Declaration.

During her meeting with DeSousa, he represented to her that DeSousa had at least $83,000 in his bank account at Chevy Chase Bank that he would make available to Paychex to use to issue payroll checks on behalf of HCI. *Id.* ¶ 6. Paychex's normal operating procedure would have been for Paychex to run a credit check on DeSousa's bank account at Chevy Chase Bank to confirm that he had $83,000 on deposit at the bank. *Id.* If Paychex confirmed that amount on deposit at Chevy Chase Bank, Paychex would advance $83,000 (less Paychex's fee) to DeSousa/HCI to use for payroll services and concurrently obtain the $83,000 from DeSousa's bank account at Chevy Chase Bank to reimburse Paychex for its payroll advance. *Id.* DeSousa requested that Paychex transfer the $83,000 advance for the payroll into five separate bank accounts identified and purportedly controlled by DeSousa. *Id.*

According to Ms. Ojukwu, DeSousa was adamant that Paychex make the $83,000 available to DeSousa by Tuesday, August 28, 2007. *Id.* ¶ 7. DeSousa told her that he intended to travel to Sao Paulo, Brazil for three to four months and, then, travel to Costa Rica for an indefinite period of time. *Id.* According to DeSousa's now-expired passport, which the Secret Service seized as part of a search in 2004, DeSousa lived in Brazil before emigrating to the United States. Ms. Ojukwu inferred from DeSousa's statements that he intended to use a portion of the $83,000 payroll advance to pay for his travel to Brazil and Costa Rica. *Id.* Following their

4

meeting, Ms. Ojukwu ran a Google computer search using DeSousa's name, located the press release issued by the United States Attorney's Office announcing DeSousa's plea agreement in the instant matter, and immediately contacted the United States Attorney's Office about these events on Thursday, August 23, 2007. *Id.* ¶ 8.

Paychex informed DeSousa on or around Friday, August 24, 2007, that Paychex would not provide payroll services to DeSousa or HCI because of credit risk concerns. *Id.* ¶ 9. Paychex did not, however, inform DeSousa about its discovery that DeSousa had pleaded guilty to the instant offenses. *Id.* As a result, Paychex did not attempt to determine whether DeSousa had $83,000 in his account at Chevy Chase Bank as he had represented to Paychex. *Id.*[1] DeSousa, however, has recently represented to the Probation Office that he has zero assets.

**B.    DeSousa's failure to close ATM-related websites**

From the date of DeSousa's plea hearing on April 25, 2007, through early July 2007, DeSousa continued to operate his ATM-related website, www.hcinc.biz, contrary to the specific condition of release that he close out all such websites. Even worse, there is evidence that DeSousa operated that website in a fraudulent manner.

---

[1]    Paychex has been the victim of fraud in connection with its payroll services. Paychex's normal operating procedure is to make payroll advances to a customer before the customer provides the funding for the payroll to Paychex. That is, once Paychex confirms that a customer has funds available in the customer's account to pay for payroll, Paychex will advance the requested amount of funds to a customer, but there is a 12-15 hour window before Paychex obtains its reimbursement for the payroll from the customer. *Id.* ¶ 10. Paychex has been victimized in the past by customers that remove the funds from the customer's account during that 12-15 hour window in such a way that the customer obtains the payroll advance from Paychex, but does not reimburse Paychex for the payroll advance. *Id.* Ms. Ojukwu opined that DeSousa may have heard about this scam and been attempting to execute the scam on Paychex in an effort to steal the $83,000. *Id.*

On or about July 3, 2007, Special Agent Lucjak received information from a complainant that DeSousa continued to operate his website at www.hcinc.biz. *See* Lucjak Dec. at ¶ 11. Special Agent Lucjak learned from the complainant that another individual, Ms. Julett Cox, had allegedly been defrauded by DeSousa as a result of the website. *Id.* Following receipt of this information from the complainant, Special Agent Lucjak began monitoring DeSousa's website at www.hcinc.biz. The website remained active until July 9, 2007, when it was taken down upon the government's demand.[2] As a result, it appears that DeSousa continued to operate an ATM-related website from April 25, 2007 through on or about July 9, 2007.

Special Agent Lucjak subsequently interviewed by telephone Ms. Julett Cox of St. Petersburg, Florida. *See* Lucjak Dec. at ¶ 12. Ms. Cox stated that her original contact with DeSousa was in March 2007, when she came across his website, www.hcinc.biz, on the internet advertising ATMs for sale. *Id.* After she saw his website, she called DeSousa via telephone at HCI's phone number, 410-900-7912, to discuss the purchase of a couple new ATMs. *Id.* Ms. Cox ultimately wired DeSousa/HCI Communication $9400 on May 1, 2007 for the purchase of two new ATMs. *Id.* ¶ 13. According to Ms. Cox, the ATMs that arrived from HCI 3-4 weeks later were old, used and beaten up. *Id.* According to Ms. Cox, the machines are so outdated that someone told her that they would not be able to stock them with cash. *Id.* ¶ 14.[3]

---

[2]    On July 3, 2007, the government informed DeSousa's counsel via letter that the government had learned that DeSousa was violating his conditions of release by continuing to operate the website. *See* Letter from Michael Atkinson to Jonathan Jeffress (dated July 3, 2007) (attached hereto as Exhibit 2). On July 9, 2007, DeSousa's counsel confirmed by telephone that the website had been taken down.

[3]    Ms. Cox stated that DeSousa came to visit her in Florida in early May 2007 telling her that he was interested in having her work for him by checking his pay pal accounts and possibly managing a real estate business that he was interested in starting up, and informing her

6

## ARGUMENT

### DeSousa is a Flight Risk and Violated his Conditions of Release

DeSousa is no longer cloaked in the presumption of innocence for his crime, having pled guilty and awaiting sentence. The defendant, having pled guilty to a fraud offense and now awaiting imposition of sentence, must show by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released. 18 U.S.C. 3143(a). This is a notable shift from pretrial release situations in which a defendant has not been found guilty, both in the burden of going forward as well as the quantum of proof necessary. *Cf.* 18 U.S.C. 3142(e).

Here, DeSousa can no longer satisfy his burden. His statement to the Paychex employee that he intended to leave the country for Brazil and Costa Rica demonstrated that DeSousa is now a flight risk. Under his plea agreement, DeSousa stipulated to a total offense level of 20, which equates to a Guideline range of 33-41 months imprisonment. DeSousa has no reasonable expectation that he may lawfully leave the country for Brazil or Costa Rica in the near future.

Further, as stated above, on April 25, 2007, the Court allowed DeSousa to remain in the community on the condition that he close out any ATM-related websites and not commit any criminal offenses. *See also* 18 U.S.C. Section 3142(b) (pretrial release is "subject to the condition that the person not commit a Federal, State, or local crime during the period of release"). As outlined above, DeSousa has not kept his promises to the Court. Instead, he continued to operate an ATM-related website, operated it in a fraudulent manner, and recently attempted to defraud Paychex out of at least $83,000.

---

that he kept all of his money in a bank in Australia. *Id.* ¶ 15.

7

18 U.S.C. Section 3148(a) provides the following sanctions for violation of a release condition:

> A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

The appropriate remedy, here, is revocation of release and detention.

Section 3148(b) allows the government to file a motion to revoke bond before the judicial officer who had ordered the release and whose order is alleged to have been violated. *See* 18 U.S.C. § 3148(b). Once the defendant is brought before the court, the court shall hold the defendant without bond if, after a hearing, (1) it finds that there is (A) "probable cause to believe that the person has committed a Federal, State, or local crime while on release" or (B) "clear and convincing evidence that the person has violated any other condition of release" and (2) finds that (A) no conditions or combinations of conditions exist that will assure the person will not flee or pose a danger to the community or (B) the defendant is unlikely to abide by any condition or combination of conditions of release. *Id.*

The attached affidavit by U.S. Secret Service agent Matthew Luczak provides both the probable cause that the defendant has committed fraud while on supervised release and the clear and convincing evidence that he has not closed out all ATM-related websites. The defendant's statement to the Paychex employee that he had at least $83,000 in his account at Chevy Chase Bank appears fraudulent given his concurrent representation to the Probation Office that he has zero assets. Separately, there can be little explanation for the defendant's transaction with Ms. Cox in which he passed off used or broken ATMs through the website as new ATMs. With such

8

probable cause, there is a "rebuttable presumption" that "no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. Section 3148(b).

The government submits that DeSousa is no more likely to comply with any additional conditions in the future than he has in the past. These violations are not mere criminal impulses; rather, they are relatively complex in nature, apparently ongoing, and undertaken *after* the defendant's plea of guilty to the instant offenses. The nature and timing of the crimes show that the defendant has no regard for the conditions the Court has imposed, and there is little likelihood that his conduct would change.

As an independent basis, the government has shown that there are no conditions or combination of conditions which will assure the safety of the community. DeSousa, by his conduct, shows that he poses an economic danger to the community. "When assessing danger to the community, 'danger may, at least in some cases, encompass pecuniary or economic harm.'" *United States v. Giampa*, 904 F.Supp 235 (D.N.J. 1995) (citation omitted) (in racketeering case, but listing cases denying bail to defendants convicted of mail fraud); *see also United States v. Harris*, 920 F.Supp. 132 (D.Nev. 1996) ("often it is economic or pecuniary interests of a community rather than physical ones which are most susceptible to repeated danger by a released defendant") (restricting telemarketing employment for defendant charged in telemarketing scam).

DeSousa cannot support his burden establishing his lack of danger; indeed, by all accounts, he continued, unabashed, his schemes before, during, and after his plea in Court. Because of DeSousa's inability to refrain from engaging in economic crime, even while on release from this Court, and because the crimes here are unusually sophisticated, DeSousa poses

an economic danger to others in the community, who would be victimized by DeSousa's conduct if he were allowed to continue on release while plying his fraudulent trade. As a result, the Court should remove DeSousa from the community pending sentencing.

## CONCLUSION

Therefore, the government respectfully requests that the Court revoke DeSousa's conditions of release, issue a bench warrant, and hold him without bond. In the alternative, the government requests that the Court issue a bench warrant for DeSousa and schedule a Show Cause hearing for the defendant to explain why he should not be held without bond.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

By:

MICHAEL K. ATKINSON
Assistant United States Attorney
D.C. Bar No. 430517
Fraud/Public Corruption Section
555 4th Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 616-3702

DATED: August 27, 2007

10

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-294 (JDB) |
| | : | |
| v. | : | |
| | : | UNDER SEAL / UNSEALED |
| JOAQUIM DESOUSA, | : | |
| | : | |
| Defendant. | : | |

### DECLARATION OF SPECIAL AGENT MATHEW LUCZAK
### IN SUPPORT OF THE GOVERNMENT'S *EX PARTE* EMERGENCY
### MOTION TO REVOKE DEFENDANT'S RELEASE PENDING SENTENCING

Special Agent Mathew Luczak of the United States Secret Service declares as follows:

**A.    Background**

1.    From December 2004 to the present, I have been employed as a Special Agent with the United States Secret Service. I have received from the Secret Service and other Federal agencies specialized training which has provided me with a background and basis of knowledge relating to the investigation of fraud, including but not limited to, wire fraud, mail fraud and credit card fraud, in violation of Title 18, United States Code, Sections 1341, 1343 and 1029(a)(5).

2.    I have been the lead case agent assigned to the investigation and prosecution of the defendant, Joaquim DeSousa, since November 2005. Based on information obtained through my investigation, I understand that DeSousa's last known address is 227 South Broadway Street, Room 11, Baltimore, Maryland 21224. Although Secret Service agents seized DeSousa's United States passport during a search in 2004, I also understand from my investigation that DeSousa obtained a new passport later in 2004. I believe that DeSousa retains possession of his new passport.

**B.**    **Investigation of DeSousa's Interaction with Paychex, Inc.**

3.      On August 23, 2007, at the direction of the United States Attorney's Office, I contacted Ms. Chinyere Ojukwu. Ms. Ojukwu is an employee of Paychex, Inc. ("Paychex"). She informed me that Paychex provides payroll services to small companies and individuals. She stated that she worked out of Paychex's office in Owings Mills, Maryland.

4.      Ms. Ojukwu informed me that she had recently met with DeSousa. According to Ms. Ojukwu, DeSousa called Paychex's office three or four times seeking payroll services. Following those calls, at DeSousa's request, Ms. Ojukwu stated that she met with DeSousa at the Inner Harbor in Baltimore, Maryland to discuss Paychex's services. At my request, she provided me with a physical identification of DeSousa that matched his physical appearance, including the fact that he was missing some of DeSousa's lower teeth.

5.      During their meeting in Baltimore, Ms. Ojukwu stated that DeSousa informed her that he wanted to use Paychex to provide payroll services to his company, which he identified to her as HCI Communication Inc. ("HCI"). I recognized the corporate name HCI from my investigation of DeSousa as the name of the company that he had operated that had been involved in the sale of automated teller machines or ATMs. According to Ms. Ojukwu, DeSousa represented to her that HCI was involved in a business related to ATMs. As part of their discussions, Ms. Ojukwu stated that DeSousa provided her with the following documents: (1) an Employer Identification Number form letter from the Internal Revenue Service for HCI; (2) a handwritten list of six separate bank accounts purportedly controlled by DeSousa; (3) a voided check from a checking account in DeSousa's name from Chevy Chase Bank; (4) wiring instructions for an account in DeSousa's name at Bank of New York; (5) a Paychex Services

Agreement executed by DeSousa; and (6) a Paychex Direct Deposit/Access Card authorizing Paychex to deposit $14,000 in DeSousa's account at Bank of New York. Ms. Ojukwu provided me with a copy of each of the documents, and I have attached them to this Declaration as Tab A.

6.      During her meeting with DeSousa, Ms. Ojukwu informed me that DeSousa represented to her that he had enough money in his bank account at Chevy Chase Bank to cover $83,000 in payroll that he sought from Paychex to use to issue payroll checks on behalf of HCI. According to Ms. Ojukwu, Paychex's normal operating procedure would have been for Paychex to run a credit check on DeSousa's bank account at Chevy Chase Bank to confirm that he had $83,000 on deposit at the bank. If Paychex confirmed that amount on deposit at Chevy Chase Bank, Ms. Ojukwu stated that Paychex would advance $83,000 (presumably less some amount for Paychex's fee) to DeSousa/HCI to use for payroll services and concurrently obtain the $83,000 from DeSousa's bank account at Chevy Chase Bank to reimburse Paychex for its payroll advance. Ms. Ojukwu stated that DeSousa requested that Paychex transfer the $83,000 advance for the payroll into five separate bank accounts identified and purportedly controlled by DeSousa.

7.      Ms. Ojukwu told me that DeSousa was adamant that Paychex make the $83,000 available to DeSousa by Tuesday, August 28, 2007. According to Ms. Ojukwu, DeSousa told her that he intended to travel to Sao Paulo, Brazil for three to four months and, then, travel to Costa Rica for an indefinite period of time. According to DeSousa's now-expired passport, which the Secret Service seized as part of a search in 2004, DeSousa lived in Brazil before emigrating to the United States. Ms. Ojukwu stated that she inferred from DeSousa's statements that he intended to use a portion of the $83,000 payroll advance to pay for his travel to Brazil and Costa Rica.

3

8.    Ms. Ojukwu told me that she considered DeSousa's immediate need for the money to be odd. As a result, following their meeting, Ms. Ojukwu stated that she ran a Google computer search using DeSousa's name. According to her, the search revealed the press release issued by the United States Attorney's Office announcing DeSousa's plea agreement in the instant matter. Following that search, Ms. Ojukwu stated that Paychex informed the United States Attorney's Office about these events on Thursday, August 23, 2007.

9.    Ms. Ojukwu stated that Paychex informed DeSousa on or around Friday, August 24, 2007, that Paychex would not provide payroll services to DeSousa or HCI because of credit risk concerns. She stated that Paychex did not inform DeSousa about its discovery that DeSousa had pleaded guilty to the instant offenses. As a result, Paychex did not attempt to determine whether DeSousa had $83,000 in his account at Chevy Chase Bank as he had represented to Paychex. Even after Paychex informed DeSousa that it would not provide payroll services to him, Ms. Ojukwu stated that DeSousa called her on her personal cell phone as part of an effort to encourage her to continue to attempt to persuade Paychex to make the funds available to him.

10.    Ms. Ojukwu stated that Paychex has been the victim of fraud in connection with its payroll services. She informed me that Paychex's normal operating procedure is to make payroll advances to a customer before the customer provides the funding for the payroll to Paychex. That is, once Paychex confirms that a customer has funds available in the customer's account to pay for payroll, Paychex will advance the requested amount of funds to a customer, but there is a 12-15 hour window before Paychex obtains its reimbursement for the payroll from the customer. She informed me that Paychex has been victimized in the past by customers that remove the funds from the customer's account during that 12-15 hour window in such a way that

4

the customer obtains the payroll advance from Paychex, but does not reimburse Paychex for the payroll advance. Ms. Ojukwu opined that DeSousa may have heard about this scam and been attempting to execute the scam on Paychex in an effort to steal the $83,000.

### C.    Investigation of DeSousa's Interaction with Julett Cox

11.    On or about July 3, 2007, I received information from a complainant, Michael Luthor, that DeSousa continued to operate his website at www.hcinc.biz. Mr. Luthor also informed me that another individual, Ms. Julett Cox, had been defrauded by DeSousa as a result of the website. Following my receipt of this information from Mr. Luthor, I monitored DeSousa's website at www.hcinc.biz. The website remained active until July 9, 2007, when it was taken down.

12.    In addition, on July 13, 2007, I spoke with Ms. Julett Cox by telephone. Ms. Cox lives in St. Petersburg, Florida. Ms. Cox stated that her original contact with DeSousa was in March 2007, when she came across his web site, www.hcinc.biz, on the internet. She told me that DeSousa's website was advertising ATMs for sale. According to Ms. Cox, after she saw his website, she called DeSousa via telephone at 410-900-7912 to discuss the purchase of a couple new ATMs. I know from my prior investigation of DeSousa that the phone number provided by Ms. Cox is a telephone number used by DeSousa and was one of the phone numbers listed for HCI on its website. Ms. Cox stated that she told DeSousa at that time in March 2007 that she did not have the money to purchase the ATMs, but that she would be interested in purchasing them in the near future.

13.    Ms. Cox told me that she ultimately purchased the ATMs from DeSousa on May 1, 2007, when she wired DeSousa/HCI Communication $9400 for the purchase of two new

5

ATMs. Ms. Cox provided me with the wiring details for that transaction, which are attached hereto as Tab B. According to the wiring details, Ms. Cox wired $9400 to a Wachovia Bank account in Baltimore, Maryland in the name of HCI.Communication. Ms. Cox stated that she used her 401(k) account to make the purchase.

14.    According to Ms. Cox, the ATMs did not arrive from DeSousa until 3-4 weeks after she had wired him the money. She stated that when the machines finally arrived, they were old, used and beaten up. According to Ms. Cox, the machines are so outdated that someone told her that they would not be able to stock them with cash.

15.    Ms. Cox stated that DeSousa came to visit her in Florida in early May 2007 to discuss some business opportunities with her. She stated that DeSousa told her that he was interested in having her work for him by checking his pay pal accounts and possibly managing a real estate business that he was interested in starting up. Ms. Cox also stated that DeSousa told her that he kept all of his money in a bank in Australia.


I declare that the above is true and correct to the best of my information and belief.


__8/27/07__
DATE

*Mathew Luck* (signature)

MATHEW LUCZAK
Special Agent
United States Secret Service

6

# TAB A

X

**IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
P.O. BOX 9003
HOLTSVILLE NY    11742-9003

Date of this notice:  02-02-2006

Employer Identification Number:
14-1948070

Form:  SS-4

002039.225753.0008.001 1 MB 0.326 992
Illılıltlllıdılılıdılılıdılııılltltltltltltltltltl

Number of this notice:  CP-575 A

For assistance you may call us at:
1-800-829-4933

HCI COMMUNICATION INC
3429 EASTERN AVE STE 33
BALTIMORE MD    21224

IF YOU WRITE, ATTACH THE
STUB OF THIS NOTICE.

002039

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned
you EIN 14-1948070.  This EIN will identify your business account, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, please use the label we provided.  If this isn't
possible, it is very important that you use your EIN and complete name and address
exactly as shown above on all federal tax forms, payments and related correspondence.
Any variation may cause a delay in processing, result in incorrect information in your
account or even cause you to be assigned more than one EIN.  If the information
isn't correct as shown above, please correct it using tear off stub from this notice
and return it to us so we can correct your account.

Based on the information from you or your representative, you must file the
following form(s) by the date(s) shown.

Form 1120                03/15/2007

If you have questions about the form(s) or the due dates(s) shown, you can call
or write to us at the phone number or address at the top of the first page of this
letter.  If you need help in determining what your tax year is, see Publication 536,
Accounting Periods and Methods, available at your local IRS office or you can download
this Publication from our Web site at www.irs.gov.

We assigned you a tax classification based on information obained from you or
your representative.  It is not a legal determination of your tax classification,
and is not binding on the IRS.  If you want a legal determination on your tax
classification, you may request a private letter ruling from the IRS under the
guidelines in Revenue Procedure 2004-1,2004-1 I.R.B. 1 (or superseding Revenue
Procedure for the year at issue.)

① Citi BANK (c) 910 422 486 Account    7500 PPF
s. 05 200 2166 Route    7K monthly

② Citi BANK (s) 842530 98N Account    7500 PPP
05 200 0166 Route

Bit Banking Officer

**Direct Deposit Accounts**

③ Western Union 9100363133535 - Account    2000 monthly
091409568    Route    1000 PPP

④ A. G Edward    ~~Credit~~ 333127781 Account    18K Check
X ~~check by mail~~    Alt HCI/communication

Page: e/o MR Red (son)
Tax ID #: 14-1948070
Joaquim DeSosa dba    A.G Edward (son)
HCI Communication Inc.    111 S. Calvert St.    Baltimore, Md 21202

⑤ Chevy Chase BANK    28K PPP
249430 2056 Account
255071981 Route

* Pay into his acct.

⑥ BANK Of New York    14K PPP
Brokerage Account.
30 Q 118546
ABA # 021000068
A/C 8900512385
Client Name? Joaquim DeSousa

M. Joaquim DeSousa

SS#:  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
3429  Eastern Ave. Ste. 33
Balto, MD      21224
S-1 exemption



JOAQUIN G. DESOUSA T-A
HCI COMMUNICATION
3429 EASTERN AVE., STE. 33
BALTIMORE, MD 21224

1004

85-7198/2550
249

DATE

PAY TO THE
ORDER OF _____ $ _____

_____ DOLLARS ⓐ

CHEVY CHASE BANK
BETHESDA, MARYLAND 20814

FOR _____

⑆00 1004⑆ ⑆2550 7198 4⑆ 24930 2056⑆

## <u>Wire Instructions</u>

Bank of New York

One Wall Street
New York NY 10286

ABA # 021000018

F/A/O Pershing

A/C # 8900512385

Client's Name  Joaquim DeSousa dba HCI/Communication Inc

Client's Brokerage Account Number

30Q-118546




New Bank information

Company Name __ HCY Communications Inc __

Office/Client Number ___ ___ / ___ ___

Federal ID Number __ __ __ __ __ __ __ __

# Paychex Services Agreement

This Paychex® Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement shall continue until terminated in accordance with its provisions. Paychex shall provide the services initialed below "Services"). Client shall also receive, at no charge, the Tax Credit Analysis Service as described below. Paychex will not commence any of the Services until Paychex receives all documents necessary to begin each of the Services and notifies Client of the date Paychex will commence each of the Services ("Service Effective Date"). Client acknowledges that each of the Services may have separate Service Effective Dates. Until the Service Effective Date, Client shall provide for itself the Services requested of Paychex. Paychex assumes no responsibility for services prior to the Service Effective Date.

X **Taxpay®**
On or before Client's check date, Paychex will (i) process EFT transactions for such amounts as are necessary to pay the payroll taxes that are specifically identified on the *Cash Requirements and Deposits Report*; (ii) hold such amounts in a separate Paychex account until such time as these amounts are due to the appropriate taxing authorities; and (iii) prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis. Paychex is not responsible for the payment of taxes or the filing of returns prior to the Taxpay Service Effective Date or for payroll taxes that Paychex did not collect from Client. **1-800 State Unemployment Insurance Support Line:** Paychex will provide Client with telephone assistance related to unemployment claims, pre-hearing preparation, voluntary contributions, tax rate questions, and benefit charge statements. Telephone assistance is obtained at 1-877-823-2953, State Unemployment Insurance option.

**State Unemployment Insurance Service (SUIS)**
Paychex will provide the following services relating to unemployment insurance: claim and appeal processing, pre-hearing preparation, analytical review of voluntary contributions, and charge statement balancing. Client agrees to complete applicable Power of Attorney and Record of Address forms where needed.

X **Readychex®**
Paychex will (i) process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees; (ii) hold such amounts in an account established by Paychex until Client's check date; and (iii) draw checks payable to Client's employees on Client's check date and provide those checks to Client. Client shall distribute checks on check date or thereafter. Checks distributed to employees before check date will not be honored and it will be Client's responsibility to pay the employees. If Client's employee fails to present a check for payment within six (6) months of check date ("Stale Check"), Paychex will refund the amount debited for the Stale Check back to Client minus any balances owed by Client and charge a fee for the transfer of the Stale Check funds back to Client. Client shall be solely responsible for remitting to its employee, or former employee, any amounts due and following any state unclaimed property laws in regards to outstanding employee funds.

**Direct Deposit/Access Card**
Paychex will process EFT transactions, one or more banking days prior to Client's check date, for such amounts as are necessary to pay Client's employees. Such amounts are to be held in an account established by Paychex until Client's check date, when funds shall be deposited to employee accounts as specified.

**Check Signing**
Paychex will use Client's signature to create a computer-generated facsimile that will display on each of Client's payroll checks each payday.

**Check Insertion**
Paychex will insert Client's signed checks into individual employee envelopes that will be sealed and returned to Client.

**Logo Service**
Paychex will use Client's logo to create a computer-generated facsimile that will display on each of Client's payroll checks. Client warrants that Client is the owner of any logo it authorizes Paychex to use, has full right and authority to use it on its payroll checks, and that such use does not violate any other party's rights.

**Premium Only Plan (POP)**
Paychex will act as Plan Service Provider for Client's POP. Paychex will prepare the Plan Document, Adoption Agreement, and Summary Plan Description, and perform compliance testing.

**Garnishment Payment Service**
Paychex will process EFT transactions, one banking day prior to Client's check date, for Client's employees' garnished wages as are necessary to remit to the appropriate entities. Client shall provide Paychex with a garnishment order for each employee for whom wages are to be garnished. Paychex shall hold garnished wages in a separate account established by Paychex until such time as the amounts are due. Client remains solely responsible for the correct calculation of the amount to garnish from its employees' wages.

**Tax Credit Analysis Service**
Paychex will review Client's payroll information to determine Client's eligibility for various federal and/or state location based tax credits available to eligible business owners through various federal and state tax credit programs. If Client appears eligible for a tax credit, Paychex may contact Client to explain the Tax Credit Service, which is available for an additional charge.

Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services, nor shall Paychex be deemed a fiduciary of Client or the employer or joint employer of Client's employees. Paychex shall not be responsible for Client's compliance with, nor shall it provide legal or other financial advice to Client, with respect to federal, state, and local laws or ordinances. Client shall agree to comply with any and all applicable federal, state, and local laws or ordinances.

Client understands that this Agreement (Rev. 11/05) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, and has read and agrees to the terms and conditions of this Agreement.

Authorized Officer's Name    Joaquim DeSousa
                              PRINT

Authorized Officer's Signature    X

Title    President

Date    Aug 22, 07

Rev. 11/05

## Reporting Agent Authorization
(In accordance with IRS Form 8655)

OMB No. 1545-1058

### Taxpayer

1. Employer identification number (EIN)
2. Other identification number (State ID)
3. If you are a seasonal employer, check here .................................. ☐

4. Name of taxpayer (as distinguished from trade name)

HCI COMMUNICATION INC

5. Trade name, if any (DBA)

6. Address (number, street, and room or suite no.)

City or town                    State    ZIP code

7. Contact person

8. Telephone number    9. Fax number

### Reporting Agent

10. Name

P A Y C H E X   I N C

11. Employer identification number (EIN)

1 6 - 1 1 2 4 1 6 6

12. Telephone number

5 8 5 - 3 3 6 - 7 6 0 0

13. Address

9 1 1   P A N O R A M A   T R A I L   S O U T H

City or town

R O C H E S T E R

State  N Y   ZIP code  1 4 6 2 5 - 0 3 9 7

### Authorization of Reporting Agent To Sign and File Returns

14. Use the entry lines below to indicate the tax return(s) to be filed by the reporting agent. Enter the beginning year of annual tax returns or beginning quarter of quarterly tax returns. See the instructions for how to enter the quarter and year. Once this authority is granted, it is effective until revoked by the taxpayer or reporting agent.

940 [    ]    941 [  ] / [    ]    944 [    ]

### Authorization of Reporting Agent To Make Deposits and Payments

15. Use the entry lines below to enter the starting date (the first month and year) of any tax return(s) for which the reporting agent is authorized to make deposits or payments. See the instructions for how to enter the month and year. Once this authority is granted, it is effective until revoked by the taxpayer or reporting agent.

940 [  ] / [    ]    941 [  ] / [    ]    944 [    ]

### Disclosure of Information to Reporting Agents

16a. Check here to authorize the reporting agent to receive or request copies of tax information and other communications from the IRS related to the authorization granted on line 14 and/or line 15 .......................................................................... ☐

b. (Do not check this box, see instructions.) Check here if the reporting agent also wants to receive copies of notices from the IRS ................. ☐

### Form W-2 series or Form 1099 series Disclosure Authorization

17a. The reporting agent is authorized to receive otherwise confidential taxpayer information from the IRS to assist in responding to certain IRS notices relating to the Form W-2 series information returns. This authority is effective for calendar year forms beginning [    ]

b. The reporting agent is authorized to receive otherwise confidential taxpayer information from the IRS to assist in responding to certain IRS notices relating to the Form 1099 series information returns. This authority is effective for calendar year forms beginning [    ]

### State or Local Authorization

18. Check here to authorize the reporting agent to sign and file state or local returns related to the authorization granted on line 14 and/or line 15 ......... ☐

### Authorization Agreement

I understand that this agreement does not relieve me, as the taxpayer, of the responsibility to ensure that all tax returns are filed and that all deposits and payments are made. If line 14 is completed, the reporting agent named above is authorized to sign and file the return indicated, beginning with the quarter or year indicated. If any starting dates on line 15 are completed, the reporting agent named above is authorized to make deposits and payments beginning with the period indicated. Any authorization granted remains in effect until it is revoked by the taxpayer or reporting agent. I am authorizing the IRS to disclose otherwise confidential tax information to the reporting agent relating to the authority granted on line 14 and/or line 15, including disclosures required to process Form 8655. Disclosure authority is effective upon signature of taxpayer and IRS receipt of Form 8655. The authority granted on Form 8655 will not revoke any Power of Attorney (Form 2848) or Tax Information Authorization (Form 8821) in effect.

I certify I have the authority to execute this form and authorize disclosure of otherwise confidential information on behalf of the taxpayer.

Signature (X) _____  Title _____  Date _____
REQUIRED                                                        REQUIRED

For Privacy Act and Paperwork Reduction Act Notice, see reverse.    Office/Client number ___ ___ ___ / ___ ___ ___    Rev.10/05

TIA

**PAYCHEX**

## Direct Deposit/Access Card
## Signup Form

**Paychex Use Only**

| | |
|---|---|
| Client Number | ____ |
| Worker Number | ____ |
| PRS | ____ |
| Date | ____ |
| Verified By | ____ |

### Worker Instructions:
1. Complete the "WORKER – Required Information" section.
2. Complete the Direct Deposit, Access Card, or both sections to specify where you want your pay deposited.
3. Sign the bottom of the form.
4. Retain a copy of this form for your records. Return the original to your employer.

### Employer Instructions:
1. Complete the "EMPLOYER – Required Information" section.
2. Return this form to your local Paychex office.*
* See below for acceptable bank account documentation. Deposit slips are not accepted.

---

### WORKER – Required Information

*PLEASE PRINT*

Worker Name _Joaquim DeSousa_

### EMPLOYER – Required Information

*PLEASE PRINT*

Company Name _____

Office/Client Number _____

Federal ID Number ___ ___ ___ ___ ___ ___ ___ ___ ___

---

## Complete for DIRECT DEPOSIT and Sign Below

I authorize my employer to deposit my wages/salary to the following bank account(s):

**Bank Account #1**  ☑ Checking  ☐ Savings

Bank Name _Bank of New York_

I wish to deposit (check one):
☐ Entire Net Pay
☐ _____ % of Net
☒ Specific Dollar Amount $ _14,000_.00

Please attach one of the following (check one):
☐ Voided check (deposit slips are not accepted)
☐ Bank letter or specification sheet*
  *See your local bank representative.

**Bank Account #2**  ☐ Checking  ☐ Savings

Bank Name _____

I wish to deposit (check one):
☐ Entire Net Pay
☐ _____ % of Net
☐ Specific Dollar Amount $ _____ .00

Please attach one of the following (check one):
☐ Voided check (deposit slips are not accepted)
☐ Bank letter or specification sheet*
  *See your local bank representative.

---

## Complete for ACCESS CARD and Sign Below

I authorize my employer to deposit my wages/salary to an Access Card account. I agree to the terms and conditions of the Paychex Access Card Program including the **$2.00** monthly maintenance fee, the **$1.50** per ATM withdrawal fee, the **$3.00** over-the-counter cash advance fee, and the **$15.00** lost or stolen card replacement fee.

I wish to deposit (check one):

☐ Entire Net Pay    ☐ _____ % of Net    ☐ Specific Dollar Amount $ _____ 00

Please print the address where the Access Card statements should be mailed.

Street Address _____  Apt. # _____

City _____    State _____    Zip _____

Home Phone No. ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

### Please also complete corresponding sections on page 2

Worker Signature X _____    Date ___ / ___ / ___

By signing above, I am agreeing that I am either the accountholder or have the authority of the accountholder to authorize my employer to make direct deposits into the named account.

Accountholder Signature _____

(If worker doesn't have authority to authorize deposits to the accountholder's account.)

DPC002  2.07

# TAB B

3001 53

| Customer ID Type | ID# | Issue State/Country | Issue | Exp./Birth Date: |
|---|---|---|---|---|
| 1. FL DL | 1. C200-421-68-500-0 | 1. FL | 1. 07/19/03 | 1. 03/02/10 |
| 2. BOA Visa ck cd | 2. N/A | 2. N/A | 2. N/A | 2. N/A |

| Associate Name | Phone and Fax # 3063 - F | Unit Cost/OC# | Date | Time |
|---|---|---|---|---|
| Yvette Borges | 331-256-6776 - F | 075/000306 | 5-1-07 | 9:10am |

Callback Required if Phone, Fax or Letter ☐ Yes ☒ N/A   Name of Person Contacted _____ Date/Time _____   Approval (required)/Market Approval (if req'd) _____
Callback Completed by: _____

| Amount of Wire | Debit Account Type (circle one) | Serial # (For ICA/GL) or Repetitive ID# | Source | ☒ OTC |
|---|---|---|---|---|
| $ 9400 00 | CHKG SAV ICA GL | | ☐ Fax ☐ Phone ☐ Letter | |

| | State | Available Balance | Account Title Juliett A Cox | |
|---|---|---|---|---|
| Account to Debit 003772504543 | FL | $ 15,515.10 | | |

| Overdraft Amount | Overdraft Approved by (Name & Signature) | Date 5/1/07 | Wire Fee $ 25.00 |
|---|---|---|---|
| $ | | | |

### Section IV: International Payment Instruction – Send in Foreign Currency

| USD Amount of Wire | Country | Rate | Foreign Currency Amount | FX Reference ID (if applicable) |
|---|---|---|---|---|
| $ | | | | |

| Debit Account Type (circle one) | Serial # (For ICA/GL) or Repetitive ID# | | Source | ☐ OTC |
|---|---|---|---|---|
| CHKG SAV ICA GL | | | ☐ Fax ☐ Phone ☐ Letter | |

| Account to Debit | State | Available Balance | Account Title | |
|---|---|---|---|---|
| | | | | |

| Overdraft Amount | Overdraft Approved by (Name & Signature) | Date | Wire Fee |
|---|---|---|---|

### Section V: Wire Information

| Beneficiary Name ACE Communication | Beneficiary Account # OR IBAN (if IBAN, no further Beneficiary Bank information is required) 2000023254048 | | |
|---|---|---|---|

| Beneficiary Address: Street # 5C | City Baltimore | State MD | Country | Zip |
|---|---|---|---|---|

| Beneficiary Bank Name Wachovia | ABA # or SWIFT or National ID 054001220 |
|---|---|

| Beneficiary Bank Address Street | City Baltimore | State MD | Country | Zip |
|---|---|---|---|---|

Additional Instructions (Attention To, Phone Advise, Customer Reference, Contact Upon Arrival)

| Send Thru Bank/IBK (if available) | ABA # or SWIFT or National ID |
|---|---|

| Send Thru Bank Address Street | | State | Country | Zip |
|---|---|---|---|---|

I authorize Bank of America to transfer my funds as set forth in the instructions noted herein (including debiting my account if applicable), and agree that such transfer of funds is subject to the Bank of America standard transfer agreement (see reverse side) and applicable fees. If this is a foreign currency wire transfer, I accept the conversion rate provided in Section IV; or, if no rate is entered, the rate provided by Bank of America at the time the wire transfer is sent.

Customer's Signature: _____   Date of Request: 5-1-07

BAT Approval Authorization (if applicable)

| | BFT System Time 8.20.29 | BFT Sequence # 010705010003010 |
|---|---|---|
| Wire Entered by: Name/Signature (attach BFT screens prints) | | |
| Print: Yvette Borges   Signature: | | |
| Date of Entry and Verification | Verified By (Name/Signature)(Train Verification Screen) | BFT System Time |
| | Print: | |

**Note:** Purpose of Wire must be disclosed if sent to an OFAC blocked country – See TAO, nw.help.block.entry
When debiting internal account/ICA, send original to National Channel Ops (SC3-250-02-39)
White-National Channel Operations (if internal account debited)   Canary-Customer   Pink-Banking Center

95-14-0237B  06-2005

# EXHIBIT 2



**U.S. Department of Justice**

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

_____

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

*Writer's Direct Dial Number: 202-616-3702*

**VIA FACSIMILE (202-208-7515)**                    July 3, 2007

Jonathan Jeffress
Assistant Federal Defender
Federal Public Defender's Office
625 Indiana Avenue, N.W.
Washington, D.C. 20004

                    Re:    *United States v. Joaquim DeSousa*, Crim. No. 06-294

*Jon:*
Dear Mr. Jeffress:

        This is to inform you that it appears that your client, Joaquim DeSousa, is violating his
release conditions by continuing to operate an ATM-related web site. Based on the docket sheet
in this matter, it appears that Judge Bates ordered Mr. DeSousa at the plea hearing on April 25,
2007, to close out all ATM-related web sites as a condition of his release. We recently received
information, however, that Mr. DeSousa continues to operate an ATM-related website at
www.hcinc.biz. Through the operation of that web site, we also understand that Mr. DeSousa
may have defrauded at least one individual since the plea hearing by passing off used ATM
machines as new machines. We are continuing to investigate these allegations. In the meantime,
please confirm in writing on or before Monday, July 9, 2007, that Mr. DeSousa is in
conformance with his release conditions, specifically that he has closed out all ATM-related web
sites. If we do not receive a satisfactory response by that date, we will be forced to seek to
modify Mr. DeSousa's release conditions. If you have any questions or need additional
information, please give me a call.

                                        Truly yours,

                                        JEFFREY A. TAYLOR
                                        UNITED STATES ATTORNEY

                            By:    _____

                                        Michael Atkinson
                                        Assistant U.S. Attorney